**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO. 10-CV-01643 DSD/AJB**

| | |
|---|---|
| Eric C. Johnson,<br><br>            Plaintiff,<br><br>    v.<br><br>ADP Screening and Selection Services,<br>Inc.; and Robert Half International,<br>Inc.,<br><br>            Defendants. | **PLAINTIFF'S RESPONSE**<br>**MEMORANDUM IN**<br>**OPPOSITION TO DEFENDANT**<br>**ROBERT HALF**<br>**INTERNATIONAL, INC.'S**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT** |

## INTRODUCTION

Plaintiff Eric Johnson ("Plaintiff") submits this memorandum in opposition to Defendant Robert Half International, Inc.'s Motion for Summary Judgment.  Defendant's motion should be denied in its entirety because it is premature, and Defendant has not shown as a matter of law that it is entitled to summary judgment on Plaintiff's Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") claims arising from its unreasonable use of an erroneous criminal background report and the hurried adverse action taken against him.

## FACTS

### I.    *Facts Relevant to Plaintiff's Claims Against Robert Half International, Inc.*

In or about February 2010, Plaintiff completed online employment applications for two positions with Defendant Robert Half International, Inc. ("RHI") who contacted Plaintiff and set up an interview for the two open positions. *See Affidavit of Eric C. Johnson*

dated November 11, 2010 ("Johnson Aff.") at ¶1.   On or about February 10, 2010, Plaintiff completed the interview process with Defendant RHI and was given a hiring packet containing materials for him to complete, including an authorization for Defendant to check Plaintiff's background, a W-2 form and an auto deposit slip. *Id. at ¶2.*

Thereafter, Defendant ADP, on behalf of Defendant RHI, assembled, produced, and published a consumer report about Plaintiff and his background that contained numerous false and incorrect criminal records about Plaintiff, including that which had been previously disputed and deleted,[1] in violation of 15 U.S.C. §§ 1681e(b) and 1681i(5)(b). Specifically, the report produced and published by Defendant ADP about Plaintiff falsely stated that he had three convictions from Fairfax County Virginia, stated that he was a convicted, registered sex offender in Virginia, Missouri, and Wisconsin, and stated that he been convicted of a weapons offense, fraud, and DWI in Texas.[2] *See Johnson Aff. at ¶¶3-4, Ex. 1 & 2.*

The ADP report also reveals several other relevant facts.   First, contrary to Defendant's characterization of its use of the report as a factor in determining eligibility to remain in its pool, the ADP report was actually obtained and used specifically for the Wells

---

[1] This was not the first time Defendant ADP had provided an inaccurate report about Plaintiff to an employer. *See Amended Complaint at ¶¶6-14.*

[2] Based on the personal information provided by Plaintiff to obtain his consumer report, in addition to his previous dispute in April 2008, Defendant ADP knew and/or should have known the above-referenced criminal information did not pertain to Plaintiff.  Specifically, the 2010 ADP report contained several identifying inaccuracies that did not connect Plaintiff to the specifics in the report.  For example, Plaintiff's race is white and several of the convictions list the race of the offender as black.

Fargo position.  Second, it appears that the report was first requested on January 27, 2010 and initially generated from an automated database on that same date.  Plaintiff has asked for a Rule 56(f) stay in order to conduct discovery related to the generating and use of the report.   However, it appears from an outside read of the report that the products "Criminalink, National Sex Offender Registry, First Check and Namelink were all completed on January 27, 2010.  Thereafter, the results of such searches – evidencing a criminal history purportedly belonging to the Plaintiff – automatically precluded Plaintiff from approval for the Wells Fargo job and led to the additional searches conducted thereafter, each of which only confirmed the earlier outcome.[3]

Thereafter the Plaintiff received a letter from Defendant RHI dated and allegedly mailed on February 11, 2010 stating that his application for employment was "on hold due to a criminal record disclosed in the criminal background report" produced by Defendant ADP.  Defendant RHI further stated that the "record noted in the report is the type that will typically disqualify you from employment."   However, Defendant RHI's letter did not indicate which criminal record was of the type to disqualify Plaintiff from employment.Defendant RHI's letter told Plaintiff that unless it received a "revised report" from Defendant ADP "that does not contain a disqualifying criminal record within 10 business days," he would be disqualified from employment.  Defendant RHI enclosed a copy of the report to which it was referring and a summary of Plaintiff's rights under the FCRA, which included an explanation that he had a right to dispute the content of the report

---

[3] Plaintiff has not yet been able to conduct discovery as to these "behind the scene" decision processes.

to the consumer reporting agency, and that "[i]naccurate, incomplete, or unverifiable information must be removed or corrected, usually within 30 days." *Id. at ¶3, Ex. 1.*

Plaintiff was not able to communicate his dispute about his criminal background to Defendant ADP until the following Monday, February 15, 2010. *Id. at ¶5.* On February 15, 2010, Plaintiff also telephoned Defendant RHI to dispute the report on which it was basing its employment decision, explained that the criminal records did not pertain to him, and that he was disputing the information with Defendant ADP. *Id. at ¶6.* On or about February 24, 2010 Plaintiff telephoned Defendant ADP to check the status of his dispute, but was told that it had no information and that it had up to 30 days to investigate his dispute. *Id. at ¶7.* Regardless, on February 25, 2010, adding further indignity to the original February 11, 2010 adverse action notice, Defendant RHI sent Plaintiff a letter stating that Plaintiff was disqualified from future employment based upon the information obtained from Defendant ADP. *Id. at ¶8, Ex. 3.*

On or about March 2, 2010, Defendant ADP sent Plaintiff four separate letters acknowledging receipt of his dispute on February 15, 2010 and explained that its investigation had "resulted in the discovery of incorrect information." Defendant ADP's letters further stated that it had contacted Defendant RHI and "informed them of your dispute and the outcome of the investigation." *Id. at ¶9, Ex. 4.* Plaintiff thereafter telephoned Defendant RHI to inquire as to the status of his employment application, but was told that his file had been forwarded to the legal department. *Id. at ¶10.*

On March 19, 2010, Defendant RHI's agent telephoned Plaintiff and left him a message stating that according to the legal department, "the information provided" was not

enough to "overturn" its employment decision and that there was nothing else that could be done. *Id. at ¶11.*

On April 16, 2010, Plaintiff commenced this action against Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") and Defamation[4] based upon the above-described conduct. *See Doc. No. 1, Verified Complaint.*   Plaintiff's claims against Defendant RHI arise specifically from its failure to provide Plaintiff with proper notice before taking adverse action against him upon receiving the clearly erroneous background report from Defendant ADP, and failing to comply with the statutory requirements in violation of 15 U.S.C. § 1681b(b)(3)(A) by taking adverse action against Plaintiff before he had a reasonable amount of time to respond and dispute the false and derogatory information contained in the report.

## ARGUMENT

### I.   Legal Standard.

Summary judgment is only proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*   The moving party bears the initial burden of

---

[4] Plaintiff has not made a defamation claim against Defendant RHI, only against Defendant ADP.

identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II.    Defendant's Motion Should Be Denied As Premature.

The original scheduling order was issued on July 17, 2010, setting forth a discovery cutoff date of April 1, 2011.[5]  Defendant served its Motion for Summary Judgment on October 22, 2010, just over three months after the scheduling order was issued and well before discovery was set to end in this case.  While discovery does not need to be complete before a case is dismissed on a Rule 56 Motion, "summary judgment is only proper if the nonmovant has had adequate time for discovery." *Pony Computer, Inc. v. Equus Computer Sys. of Mo., Inc.*, 162 F.3d 991, 996 (8th Cir.1998).  "A court may deny a motion for summary judgment if the "party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." *Fed.R.Civ.P. 56(f); see Ballard v. Heineman*, 548 F.3d 1132, 1137 (8th Cir.2008); *Steen v. Target Corporation*, 2010 WL 2671985 *2 (D.Minn.2010).

As the Court will see upon a review of the docket, this case has been aggressively litigated since Day 1, even before the scheduling order was issued.  Plaintiff and his counsel have not been sitting on their hands, but have been engaging in initial discovery,

---

[5] Per the parties' stipulation, an Amended Scheduling Order was issued on November 10, 2010.  Discovery is now set to end on May 15, 2011. *See Doc. No. 66.*

including depositions and written requests, and motion practice.[6]  Despite Plaintiff's efforts to date in moving forward with this case, significant discovery is still incomplete and Plaintiff is without all of the documents and information necessary to oppose Defendant's hasty motion. *See generally Affidavit of Trista M. Roy dated November 10, 2010.*

Despite its apparent urgency to prosecute the present Motion, Defendant RHI has not cooperated to expedite and facilitate completion of discovery.   To begin, the following written discovery requests remain unanswered:

**INTERROGATORY NO. 12:**   Please describe the policy and procedure followed by RHI after receipt of a background report containing criminal convictions.

**INTERROGATORY NO. 13:**  Please describe RHI's policy and procedure after sending adverse action notices to job applicants (*see, for example, Plaintiff 025 and 050*) following unfavorable background reports.

**INTERROGATORY NO. 14:**   Who filled the position(s) for which Plaintiff applied and/or was being considered and when were they hired?

**INTERROGATORY NO. 19:**  Please explain why Plaintiff's application was placed "on hold" and what the phrase "on hold" means as stated in the letter dated February 11, 2010. *See Plaintiff 0025.*

---

[6] To date, three depositions have been taken in this case.  Plaintiff has served written discovery on both Defendants.  Defendant ADP has provided responses, while Defendant RHI's responses are due on November 24, 2010. *See Roy Aff. ¶2, Ex. A.*

**REQUEST NO. 12:**   Please produce any and all training materials you use to instruct your agents and/or employees in FCRA compliance and compliance with your accuracy standards.

*See Roy Aff. ¶2, Ex. A.*   These discovery requests in part seek to discover the actual process used by RHI with regard to Plaintiff's employment application, specifically Defendant's actions taken after receipt of the criminal background report, including any and all adverse actions as defined by 15 U.S.C. § 168a(k)(1)(B)(ii), the <u>timing</u> of Defendant's adverse actions with regard to Plaintiff and the date on which it decided not to hire Plaintiff and/or hired someone else for the positions for which he applied and/or was being considered,[7] and Defendant's policies and procedures in taking adverse action under the  particular circumstances presented in this case (i.e. the policy underpinning its decision to give Plaintiff only ten days to rectify Defendant ADP's false and defamatory report). *Roy Aff. ¶3.*   In addition, Plaintiff needs the deposition testimony of Defendant RHI's representative in order to address the arguments raised in Defendant's Motion as well and to elicit testimony about Defendant's relationship with Defendant ADP, how long that relationship has lasted and its understanding of how Defendant ADP processes disputes and how long it typically takes to process disputes, and intends to schedule that deposition once Defendant RHI's written discovery responses are served. *Roy Aff. ¶¶3, 6.*

---

[7] Defendant's argument assumes that the adverse action(s) taken against Plaintiff correspond exactly to the dates of the letters sent to him.  Plaintiff seeks to know when decisions were made about whether or not to hire him as that is clearly relevant to the issue of Defendant's adverse actions and when they occurred.

While this information is not presently available to Plaintiff for response to this Motion, it is necessary for a Plaintiff's ability to prosecute such a claim under the FCRA. *See Declaration of Leonard Bennett.* Employer use of automated decision rules to unconditionally terminate a consumer's application for a particular job is common in similar FCRA cases. *Id.* The decision often formally occurs internally because of an objective inflexible hiring policies implemented by employer vendors on their behalf. No discretion is involved. *Id.*

Accordingly, Defendant's Motion for Summary Judgment should be denied without prejudice, or at the very least stayed for three additional months in order that Plaintiff be afforded the opportunity to complete the discovery necessary to justify his opposition.

### III.   Defendant's Motion Should Be Denied Because At The Very Least A Genuine Issue of Material Fact Exists As To its Compliance With 15 U.S.C. § 1681b(b)(3)(A).

Regardless of Defendant's cavalier statement that the FCRA "is not an employment statute," the FCRA clearly protects prospective employees, or "consumers"[8] like Eric Johnson, in the employment setting in situations where the employer chooses to use consumer reports as part of its screening and hiring process. While the FCRA undeniably protects consumers' credit reports, Congress clearly manifested intent for its protections to go beyond the typical credit context, as "consumer reports"[9] are not simply

---

[8] "Consumer" means as "an individual." *15 U.S.C. § 1681a(c).*

[9] "Consumer report" means:

limited to those assembled and  used in extending credit, and there are sections specific to the use of reports in an employment setting, not to mention other settings including housing.  This makes sense given the fact that an incorrect criminal background report prepared by a third party over whom the consumer has no control can be just as damaging, if not more so, to a consumer's opportunities, livelihood, and quality of life through no fault of his own. *See Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409 (4th Cir.2001) (affirming that protection of employment applicant amongst the most important objectives of the FCRA).  Defendant's interpretation of the statute is simply too narrow and not an accurate reading of the actual text.

To be clear, this case is not about an erroneous credit report containing false information about an untimely loan payment.  This case is about a criminal background report requested by Defendant RHI and instantly terminated Plaintiff's application for employment on the Wells Fargo job and then further blacklisting him from any and all employment with Defendant and its "clients" through no fault of his own and despite his due diligence to dispute the obviously unreliable report and its contents indicating that he was a convicted felon and a registered sex offender in multiple states.  While Defendant

---

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for
>
> ***
>
> (B) employment purposes ….

*15 U.S.C. § 1681a(d)(1) (2006).*

RHI did not assemble or produce the false and offensive report, it did use the report in taking adverse action against Plaintiff, giving rise to his claims against Defendant RHI under Section 1681b(b)(3)(a).

### a. Defendant is not entitled to summary judgment as there is genuine issue of material fact as to when adverse action was taken against Plaintiff.

While discovery is far from complete, it is clear based upon the present record that at some point, Defendant RHI took "adverse action" against Plaintiff after it received the report from Defendant ADP. "Adverse action" includes "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." *15 U.S.C. § 1681a(k)(1)(B)(ii)*. However, as a condition in using consumer reports for employment purposes, "<u>before</u> taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates:

    (i)     a copy of the report; and

    (ii)     a description in writing of the rights of the consumer under this title, as prescribed by the Federal Trade Commission under section 609(c)(3).

*15 U.S.C. § 1681b(b)(3)(A).*

Plaintiff alleges in his Amended Complaint, and Defendant's letters indicate, that Defendant took adverse action within the meaning of the FCRA on at least two

occasions.   The timing of these actions is important to the determination of whether Defendant complied with the FCRA's notice requirements before taking such actions.[10]

> ### ii. A jury could find that automatically terminating the Plaintiff's Wells Fargo application disqualifying him from that employment constituted an adverse action.

Defendant RHI incorrectly casts Plaintiff's argument as one focused solely on whether or not the delay and then termination of eligibility to remain in the RHI employee "pool."   Certainly this was an adverse action, but the most concrete adverse action was the automated denial of the Plaintiff on January 27, 2010 based on the objectively implemented Wells Fargo "hiring policy."   Ultimately, at some point, Defendant did in fact deny Plaintiff employment and/or completely disqualify him from any and all positions, including the one specifically with Wells Fargo, based upon the contents of the report.   Again, the date on which this adverse action actually took place is unknown, but it happened sometime close to the January 27, 2010 date that the primary report was completed.

Defendant does not appear to argue that that denying Plaintiff employment and/or disqualifying him constituted adverse action.   To the contrary, Defendant concedes this point but asks the Court to grant its motion for other reasons with regard to this claim, arguing it fulfilled its duties.   Its almost exclusive legal argument is premised upon the result in _Obabueki._   But that decision was – as it should be – based on the facts of that case.   In _Obabueki_ the evidence discovered and available on summary judgment showed

---

[10] _See, for example, Burghy v. Dayton Racquet Club_, 2010 WL 728282 *9 (S.D.Ohio 2010) (drawing all inferences in favor of Plaintiff on the issue of the timing of the adverse action and denying employer's summary judgment motion).

that the employer had not then made a final or firm decision.   The hiring process remained uncertain and the employer's management had merely considered whether or not to terminate the application, rather than having made a firm decision.   In contrast, in this case, Plaintiff has alleged and the actual ADP appears to confirm that the decision process was not discretionary.   The disqualification of the Plaintiff from the Wells Fargo job was firm, certain and automatic.   In *Obabueki,* the decision was not firm until the formal notice was drafted and made.   However, in this case, Defendant RHI would not and could not have changed its decision because it was automated and pre-determined by the "Wells Fargo Hiring Policy."

### ii. Placing Plaintiff's application "on hold" was an adverse action.

Defendant RHI placed Plaintiff's application "on hold" upon receipt of the erroneous report concerning Plaintiff's background.[11]   However, the date on which Plaintiff's application was placed "on hold" and/or the initial determination concerning Plaintiff's unfavorable status, is unknown as discovery remains incomplete on this point. All the record shows is that a letter was sent to Plaintiff indicating the status of his application had changed on or before February 11, 2010 in such a way that was adverse to Plaintiff's interests.[12]   The designation of "on hold" and what it means to a prospective

---

[11] To be clear, Plaintiff does not allege the sending of the letters constitute adverse actions.   Rather, his claim is that Defendant took adverse actions on two occasions which were later communicated to him in written letters after the actions had already taken place.

[12] Upon information and belief, Defendant RHI made the automated decision not to hire Plaintiff based upon the contents of the report. *See Amended Complaint at ¶29.* The

RHI employee is not clear based upon the record, but upon information and belief, the designation caused Plaintiff's application to be set aside and he was immediately removed from further consideration in connection with the specific Wells Fargo position[13] for which he was about to be hired and/or would have been hired absent the criminal convictions Defendant ADP included in its report.   In any event, while the specific date of Defendant's adverse action in placing Plaintiff's application "on hold" is unknown, the letter dated February 11, 2010 indicates that a decision had already been made before.

The definition of adverse action under the FCRA is very broad.   *See e,g*, *Barnette v. Brook Road, Inc.*, 457 F.Supp.2d 647, 657 (E.D.Va.2006) (explaining that FCRA adverse action definition of credit transaction is broader than that of Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)).   In an employment context, a FCRA adverse action includes:  "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee[.]"   *15 U.S.C. § 1681a(k)(1)(B)(ii)*.   So the legal and factual question is whether or not Defendant RHI took an action based upon the Plaintiff's consumer report that was either a denial of employment or was otherwise adverse to him.

---

letter on its face supports Plaintiff's allegation as it indicates the decision not to hire Plaintiff had been made and that it was up to him to overturn it in ten days.

[13] The report indicates its purpose was to screen Plaintiff specifically for a particular position with Wells Fargo.  Again, Plaintiff is in the process of obtaining discovery on this issue.

While Defendant RHI contends in its brief – misapprehending the broader definition of adverse action – that it never denied Plaintiff employment, the reality as to Wells Fargo shows otherwise.

However, the Court does not even need to get that far.  Even if Defendant RHI is correct that it merely delayed or put on hold Plaintiff's employment or employment eligibility, it has not and cannot defend the charge that its use of the ADP report placed the Plaintiff in a less favorable and more adverse circumstance than he would have been in if his report did not inaccurately contain the inaccurate records.   The FCRA does not offer any unique guidance for the meaning of "adverse," but the Court does not need to do much to divine its common meaning.   An "adverse" action is one that is "contrary to one's interests"[14] or "unfavorable in . . . effect."[15]  The use of Plaintiff's consumer report was certainly such an action.  The additional delay was contrary to Plaintiff's interest and unfavorable to the applicant who had sought to find and start work immediately.  The added difficulty of the dispute process was adverse, and the inability to obtain the same position he had been otherwise approved with Wells Fargo was adverse.  Defendant's premise is that an "on hold" status in which the consumer's eligibility for employment is delayed and for which any opportunities during the "hold" are lost entirely is contrary to the deliberately broad definition of "adverse action" in the FCRA.

---

[14] adverse. Dictionary.com. *The American Heritage® Dictionary of the English Language, Fourth Edition*. Houghton Mifflin Company, 2004. http://dictionary.reference.com/browse/adverse (accessed: December 17, 2007).

[15] adverse. Dictionary.com. *Dictionary.com Unabridged (v 1.1)*. Random House, Inc. http://dictionary.reference.com/browse/adverse (accessed: December 17, 2007).

Accordingly, since it is undisputed that that Defendant RHI placed Plaintiff's application "on hold" before complying with Section 1681b(b)(3)(A), Defendant's motion with regard to this claim should be denied.  At the very least, a genuine issue of material fact exists as to whether Defendant's conduct meets the definition of "adverse action" and a reasonable jury could find that the "on hold" designation taking Plaintiff out of the running for the Wells Fargo position was a "decision for employment purposes that adversely" effected Plaintiff's interests, and that he was entitled to notice before that action took place.

### b. Defendant's narrow reading and interpretation of its duties under Section 1681b(b)(3)(a) render that entire section obsolete and meaningless.

Even if the Court finds that placing Plaintiff's application "on hold" on or before February 11, 2010 was not an adverse action, there is certainly no dispute that Defendant RHI's decision to completely disqualify Plaintiff was adverse action.  Defendant argues Plaintiff's claims should be still be dismissed, however, because 1) it was not required to wait any amount of time before taking adverse action; and 2) if Defendant RHI was required to wait, the small amount of time afforded to Plaintiff to dispute and wait for Defendant ADP to fulfill its statutorily-mandated duty was adequate as a matter of law.

Defendant's overall theory or premise in this case that there is absolutely no waiting period, if accepted, would render Section 1681b(b)(3)(a) completely meaningless.  Section 1681b(b)(3)(a), based upon a plain reading of the statute, requires Defendant as a prospective employer to provide the consumer a copy of the consumer report it intends to consider "<u>before</u>" it takes any action that could be adverse to the

applicant.   Thus, the adverse action or decision not to hire a prospective employee and notice to him certainly cannot occur simultaneously, and cannot lawfully occur until a later point in time after the employer has followed Section 1681b(b)(3)(a).   Thus, the statute is clear on this point and Defendant's nonsensical argument that it was not required to wait any amount of time and essentially that it could have made the decision and sent notice simultaneously without running afoul of the statute is completely without merit or support.[16]

While the statute does not expressly state a specific period of time that must pass between the pre-adverse action notice and taking the adverse action, the statute implies and the courts have imposed a "reasonable time" requirement. *Beverly v. Wal-Mart Stores, Inc.*, 2008 WL 149032 (E.D.Va.2008) (denying employer's motion to dismiss Section 1681b(b)(3)(A) claim because whether the wait period of five days between the pre-adverse action notice and taking the adverse was reasonable under the circumstances is a question of fact for the jury to determine); *See also, Kelchner v. Sycamore Manor Health Center*, 205 F.Supp.2d 429, 434-35 (M.D. Pa. 2004) (*citing* H.R. Rep. No. 103-486 at 30 (1994) with approval for requiring a reasonable period after the § 1681b(b)(3)(A) notice before taking adverse action).   Thus, there is no question that the word "before" in the statute is key giving rise to the duties under Section 1681b(b)(3)(A).

---

[16] Moreover, the fact that Defendant allegedly waited ten days (and presumably does as a matter of policy as the letters sent to Plaintiff appear to be form letters not specifically tailored for Plaintiff) belies its argument that it is not required to wait and evinces an understanding that there is in fact a requirement to wait.

Rather, the question becomes how long before and what is reasonable under the circumstances.

Defendant argues ten business days elapsed between the pre-adverse action notice and the denial of employment.  Again, however, the record is void of any evidence as to when the decision was made but the letter itself shows that the decision not to Plaintiff was already made at that point and that it was up to him to overturn it within ten days.  At best, though, according to Defendant's argument premised upon the dates of the letters, Plaintiff was provided with a copy of the defamatory and erroneous report and notice of his rights a maximum of ten business days in advance of Defendant's outright denial of employment.  In that same "pre-adverse" notice, Defendant RHI explained to Plaintiff that the reporting agency had up to thirty days to respond to any dispute.  Regardless of the fact that Defendant RHI knew how long the dispute process could and would likely take, and the fact that Plaintiff's report contained multiple disqualifying records from multiple jurisdictions, Defendant still only allotted Plaintiff ten days.

Using the "reasonable period of time" standard is consistent with the purpose of the act and its legislative history.  The Court in *Beverly* recognized that a consumer's right to dispute inaccurate information in consumer reports is one of the most important rights in the FCRA and that the pre-adverse action notice provides the consumer with an opportunity to dispute inaccuracies when such reports are used for employment purposes:

> The Court next addresses whether a reasonable jury could find that defendant violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse action before it provided plaintiff with a copy of his consumer report. The statutory purpose of §1681b(b)(3)(A) is to enable an employee applicant to receive his draft report **[*10]** and correct any

18

> of inaccurate information in the report before any decision or action is commenced. *Kelchner v. Sycamore Manor Health Center*, 305 F.Supp.2d 429, 435 (M.D. Pa. 2004). The FTC, the agency empowered to enforce the FCRA, stresses that "dispute rights are among the most important the FCRA gives to consumers." Letter from Clarke W. Brinckerhoff to Eric J. Weisberg (June 27, 1997), FTC Informal Staff Letter. Although the law does not specify the amount of time that must elapse between a consumer's receipt of a copy of his consumer report and the employer's adverse action, a court in this district and division found that the employer must provide a copy of the report "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report." *Williams v. Telespectrum, Inc.*, Civ. No. 3:05cv853, 2007 U.S. Dist. LEXIS 78415 (E.D. Va. 2006) November 7, 2006 adopted by Judge R. Payne January 8, 2005. The employer must "provide the consumer with a reasonable period to respond" after receiving the consumer report. *Kelchner*, 305 F.Supp.2d at 435.

*Id*. at *9-10.

In *Kelchner*, the Court identified the procedures that an employer must follow if it intends to take adverse action based on a consumer report, quoting from the legislative history of Section 1681b(b)(3).

> In considering the language and purpose of the FCRA, it is clear that Congress desired to give employers the right to obtain consumer reports on their employees, since that information might bear on their qualifications for employment. Congress recognized a legitimate need on the part of employers to review their employees' credit standing, and well as their character and general reputation. It is equally clear that Congress did not intend to make this an unfettered right, and thus it also sought to protect the privacy interests of employees and potential employees by narrowly defining the proper usage of these reports and placing strict disclosure requirements on employers. In addition, an employer must follow special procedures if it intends to take adverse action based on these reports:
>
>> Specifically, before taking adverse action regarding the consumer's current or prospective employment, an employer must provide to the consumer a copy of the report and a written description of the consumer's rights under the FCRA. The employer must also provide

the consumer with a reasonable period to respond to any information in the report that the consumer disputes and with written notice and the opportunity and time period to respond. A reasonable period for the employee to respond to disputed information is not required to exceed 5 business days following the consumer's receipt of the consumer report from the employer.

H.R.Rep. No. 103-486, at 30 (1994) (discussing 15 U.S.C. 1681b(b)(3)). Thus, the Act provides strong protections against misuse of employees' personal information.

*Kelchner* at 435-36.[17]

Another district court came to the same conclusion with regard to the timing requirements of Section 1681b(b)(3)(A) in *Williams v. Telespectrum, Inc.*, 2007 U.S. Dist. LEXIS 78415 (E.D. Va., Case No. 3:05-cv-853, June 1, 2007).  In this decision, the court discusses what the advance notice requirement of Section 1681b(b)(3)(A) is designed to accomplish, and recognizes the FTC's interpretation that its designed, at least in part, to allow consumers to correct inaccuracies in the report an also discuss and respond to the employer with issues relating to the report.

The FTC opinion of December 18, 1997, expressly discusses the need for some period of time to lapse between the pre-adverse action notice and the adverse action, noting the purpose of this provision is to allow consumers to discuss the report with the employer or otherwise respond before adverse action is taken:

The wording of Section 604(b) and its relation to Section 615(a) mandate that some period of time elapse between the pre-adverse action disclosure and the employment action that triggers the Section 615(a) adverse action notice. The law, however, does not set forth what specific procedures must be followed by employers. For example, the law is silent as to how long the

_____

[17] The H.R. Rep. No. 103-486 reference discussing § 1681b(b)(3) is actually found at p. 76 of the report.

> employer must wait after making the Section 604(b) pre-adverse action disclosure before actually taking adverse action. Employers may wish to consult with their counsel so that they develop procedures that are appropriate, keeping in mind the clear purpose of the provision to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken.

*FTC Informal Staff Letter of William Haynes to Harold R. Hawkey (Dec. 18, 1997).*

Defendant RHI has not brought this standard to the Court's attention, and instead claims that it only has to satisfy a "before" test—that the advance notice must simply be before the adverse action without any limitation on how short or long "before" should be. Taking RHI's statement of the standard, an employer could provide the pre-adverse action notice just moments "before" it provides the adverse action notice and in all circumstances, the employer has fully complied with the Act. RHI's statement of the timing requirement is inconsistent with the intent of the Act, standards for statutory interpretation, and no court has supported its theory.

In *Beverly*, the district court denied the defendant's motion for summary judgment on this issue, finding that a reasonable jury could find that five days between the mailing of the pre-adverse action notice and taking the adverse action did not give the plaintiff "a sufficient or reasonable period of time to dispute the inaccuracies in his consumer report before the defendant took adverse action." *Id*. at *11. In the instant case, looking at Defendant RHI's best scenario, the employer mailed its letter at very best just days earlier than had Wal-Mart in *Beverly*.  A reasonable jury could find that Defendant RHI failed to give Plaintiff a reasonable period of time prior to taking its adverse action.

Whether ten days was "reasonable" under the particular circumstances of this case is a fact question that cannot be determined on summary judgment as a matter of law. The statute does not prescribe a specific time period, and as Defendant has pointed out, Congress had the opportunity to insert a time period but it did not. Defendant suggests that Congress' refusal to state a specific date is evidence of its intent to allow delivery of this critical notice literally any time before the adverse action is taken. But this ignores the remedial purpose of the statute – designed to protect consumers. It also asks the Court to ignore the stable canon that the Court presume that Congress intends its statutory language to have meaning. Defendant's interpretation – rejected by every court to have considered it – is that the FCRA would permit the disclosure at any time – even seconds – before the adverse action is taken. Defendant RHI's argument that even an unreasonable time would be lawful would render 15 U.S.C. § 1681b(b)(3) entirely meaningless.

"The statutory purpose of § 1681b(b)(3)(A) is to enable an employee applicant to receive his draft report and correct any of inaccurate information in the report before any decision or action is commenced." *Kelchner*, 305 F.Supp.2d at 435. Accordingly, while five days has been determined to be reasonable under some circumstances, it is by no means the rule, as the employer must "provide the consumer with a reasonable period to respond." *Beverly*, 2008 WL 149032 *3, *citing Kelchner*, 305 F.Supp.2d at 435. What is reasonable is made upon a case by case determination, and in a case such as this one involving a report replete with criminal convictions which the employer had good reason

22

to doubt but chose not to exercise its own discretion in actually reading the report,[18] a reasonable jury could find ten days was not reasonable.[19] Defendant has presented nothing to support its position that ten days was reasonable as a matter of law, other than to say that under completely different circumstances, five days has been found to be acceptable.[20] This only proves that what is reasonable is fact-specific.[21]

The FTC, the agency empowered to enforce the FCRA, stresses that "dispute rights are among the most important the FCRA gives to consumers." *Letter from Clark W. Brickeroff to Eric J. Wiesberg (June 27, 1997), FTC Informal Staff Letter.*

---

[18] Presumably, if Defendant RHI had actually read the report, it might have noticed blatant discrepancies concerning the personal identifying information. In addition, Plaintiff telephoned Defendant RHI after he disputed with Defendant ADP and explained the report was false and disputed.

[19] Exhibit C attached to the Affidavit of Daniel J. Ballintine (Doc. No. 62-1 at p. 31) supports Plaintiff's position. Therein, the FTC states that the amount of time that an employer should wait before taking adverse action will vary depending upon the circumstances, such as the nature of the job involved and the way that the employer does business." The FTC further explained that employers should keep "in mind the purpose of the provisions to allow consumers to discuss the report with employers before adverse action is taken."

Similarly, Exhibit D attached to the Affidavit of Daniel J. Ballintine (Doc. No. 62-1) supports Plaintiff's position. Therein, the FTC clearly states that "the facts of any particular employment situation may require a different time," compared to the five days discussed specifically in that situation.

[20] While the Defendant does not appear to rely specifically on the *Obabueki* case in its "reasonableness" argument, it is worth noting that that case involved a single false welfare fraud conviction. Similarly, the *Beverly* case involved a single misdemeanor charge for Failure to Return a Rental Car.

[21] It is also important to keep in mind that Plaintiff had no power to do anything whatsoever to cause Defendant ADP to sort through the numerous errors quickly. Defendant RHI told Plaintiff it would accept nothing short of a clean report from Defendant ADP specifically, but Plaintiff's only recourse at that time was to dispute and wait for Defendant ADP.

Defendant's argument, if accepted, would render futile the entire section devoted to consumers' rights to dispute erroneous and harmful criminal background information in the employment setting completely.  Defendant has failed to show as a matter of law that it is entitled to summary judgment on the issue of "reasonableness" and therefore its motion should be denied.

## CONCLUSION

First and foremost, Plaintiff has shown by affidavit that Defendant RHI's hasty motion should be dismissed as premature in accordance with Federal Rule of Civil Procedure 56(f).  In the alternative, Defendant's motion should be denied because at the very least, genuine issues of material fact exist as to whether Defendant was required to give Plaintiff notice a copy of the report and notice of his rights before his application was placed "on hold," and whether Defendant's quick decision not to hire Plaintiff without affording him a reasonable amount of time and meaningful opportunity to dispute and obtain a clean report complied with 15 U.S.C. § 1681b(b)(3)(A).

Dated this 12th day of November, 2010.     By:s/ Trista M. Roy
                                             CONSUMER JUSTICE CENTER, P.A.
                                            Thomas J. Lyons, Esq.
                                            Attorney I.D. #: 65699
                                            Trista M. Roy, Esq.
                                            Attorney I.D. #0387737
                                            367 Commerce Court
                                            Vadnais Heights, Minnesota 55127
                                            Telephone:  (651) 770-9707
                                            tristacjc@aol.com
                                            tlyons@lyonslawfirm.com
                                            *Attorneys for Plaintiff*