**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO.: 10-CV-01643 DSD/AJB**

Eric C. Johnson,

    Plaintiff,

v.

ADP Screening and Selection Services, Inc.; and Robert Half International, Inc.,

    Defendants.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RULE 59(e) MOTION TO AMEND OR ALTER THE JUDGMENT**

## INTRODUCTION

On February 24, 2011, this Court entered an Order granting Defendant Robert Half International, Inc.'s Motion for Summary Judgment in its entirety. *Doc. No. 96.* On March 2, 2011, judgment was entered against Plaintiff. *Doc. Nos. 98-99.* Plaintiff brings this motion pursuant to Federal Rule of Civil Procedure 59(e) and respectfully requests this Honorable Court to modify its Order and Judgment to allow Plaintiff to proceed with his Section 1681b(b)(3)(A) claim based on the adverse action taken against him by Defendant on or about February 25, 2010 in denying his application for employment based on the contents of a consumer report, for the following reasons:

*First,* the Court was misled and the resulting clear error of fact must be corrected as to the nature of Defendant's business and complete the lack of urgency to fill a specific position – a crucial point that factored into the Court's Order in favor of Defendant;

1

*Second,* new evidence which was not available at the time the Court heard and considered Defendant's Motion is now available and should be examined as it is clearly relevant and important to the Court's analysis of the nature of Defendant's business and complete lack of urgency to fill a specific position;

*Third*, the Court committed a clear error of law by granting summary judgment against Plaintiff, the non-moving party, despite a genuine issue of material fact as to whether Defendant's standard 10 business day waiting period under the particular facts in this case was in compliance with the letter and spirit of the FCRA-imposed duties in using a consumer report in denying Plaintiff's employment application; and

*Lastly,* the Order must be amended and/or altered to prevent manifest injustice to Plaintiff Eric Johnson, the innocent consumer and prospective employee, who was the victim of Defendant's unreasonable use and absolute reliance on a blatantly erroneous criminal background report and the hurried adverse action taken against him barring him from a vast pool of employment opportunities through no fault of his own.

## **ARGUMENT**

I.   LEGAL STANDARD FOR RULE 59(E) MOTIONS.

Federal Rule of Civil Procedure 59(e) allows a party to make "[a] motion to alter or amend the judgment," and thereby request that the Court reexamine matters properly before the Court while it still holds jurisdiction over the case. *See White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 451 (1982). The purpose of a motion under Rule 59(e) is to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). It is

appropriate where the Court has misunderstood the facts, a party's arguments, or the controlling law. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A Rule 59(e) motion should be brought when the Court has overlooked matters or controlling decisions that might have materially influenced the Court's earlier decision. *Motor Vehicle Mfr. Ass'n v. New York State Dep't of Envtl. Conservation*, 831 F. Supp. 57, 60 (N.D.N.Y.1993) (reviewing facts presented in summary judgment motion and reversing summary judgment because facts that created a genuine issue of material fact were overlooked).

The purpose of a motion to alter or amend judgment under Fed.R.Civ.P. 59(e) is to have the court reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst and Whinney*, 489 U.S. 169, 174, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). This rule gives the district court the "power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). A party must rely on one of three grounds to alter or amend the judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Servants of Paraclete*, 204 F.3d at 1012; *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999); *Hutchinson*, 994 F.2d at 1081. The party bringing the motion under Rule 59(e) must specifically identify those matters that it believes the Court has overlooked and why those matters would render the Court's decision erroneous. *Motor Vehicle Mfr. Ass'n*, 831 F. Supp. at 60-61; *Selby &*

*Dale Superette*, 838 F. Supp. at 1347; *Dave Kohl Agency, Inc. v. Redshaw, Inc.*, 149 F.R.D. 171, 176-177 (D.Wisc.1993) (Rule 59(e) motion must be in writing, must specify the grounds on which the motion is based, and must request relief.)

Plaintiff in the instant case moves in accordance with the second and third grounds, and respectfully submits that the Order and Judgment dated February 24, 2011 and March 2, 2011 must be altered and/or amended to correct a clear error of fact; to take into account new evidence; to correct a clear error of law and to prevent manifest injustice. To this end, Plaintiff requests that the Court alter the Order and Judgment as to the 15 U.S.C. § 1681b(b)(3)(A) claim concerning the adverse action taken on or about February 25, 2010, and allow the claim to proceed to trial on the merits.

I.  THE COURT'S ORDER AND JUDGMENT SHOULD BE ALTERED OR AMENDED AS THE DECISION ENTERED ON THE MERITS WAS BASED UPON A MISUNDERSTANDING OF THE FACTS.

The Court erred in entering summary judgment as to Plaintiff's claim based on the February 25, 2010 letter denying Plaintiff employment as the Court's determination was based upon an incorrect understanding of the facts and/or mistaken assumptions contradicted by the record and new evidence. To be clear, Plaintiff's argument was not that in order to comply with 15 U.S.C. § 1681b(b)(3) a potential employer is required to wait 30 days or more each time a candidate's criminal background check produced a disqualifying record. Rather, Plaintiff's argument was premised upon the following facts specific to this case:

1)  Defendant chose to obtain and use a consumer report in deciding whether or not to extend employment to Plaintiff, triggering 15 U.S.C. § 1681b(b)(3);

4

2) The 22 page report produced by ADP that Defendant chose to rely on, notwithstanding its blatant inconsistencies, contained numerous criminal records from various jurisdictions;

3) Defendant told Plaintiff he had the right to dispute the contents of the report but that ADP had up to 30 days to investigate;

4) Defendant told Plaintiff its decision would be final unless a clean report was produced by ADP within 10 business days;

5) Plaintiff immediately disputed the contents of the report and notified Defendant of his good faith and meritorious dispute;

6) Defendant issued its standard form letter to Plaintiff immediately upon the expiration of 10 days, regardless of the forgoing.

Plaintiff's claims were not based upon Defendant's failure to hire him.  His claims are premised upon the fact that Defendant's conduct failed to comply with the letter and spirit of 15 U.S.C. § 1681b(b)(3) under the particular circumstances presented by his case.

> ***a. The Court was misled as to important facts in the record that became part of the Court's rationale and which were material to the decision to rule in favor of Defendant.***

At the hearing, the Court asked defense counsel for Robert Half the following question:

> **Where is the evidence you have that this job had to be filled in a very particular short period of time?  In other words, could Wells Fargo have delayed the hiring?  Could Robert Half have delayed providing someone to them for more than 10 days or 30 days or whatever?**

5

*Doc. No. 82, Transcript of Summary Judgment Hearing at p. 33, lines 6-12.* Instead of providing a response to the Court's inquiry in a straightforward manner consistent with the factual record developed to date, defense counsel vaguely stated the following:

> **The affidavit of James Kwapick, Your Honor, that we submitted I don't believe explicitly addressed Wells Fargo specifically, but it did address Robert Half's business in general and the quick nature of placements needed.**

*Transcript at p. 33, lines13-17.* That response was evasive in that defense counsel failed to actually respond to the substance of what the Court was asking, even though the record developed to date indicated there was absolutely no such evidence that any job had to be filled in a short period of time and there was nothing urgent about the decision of whether or not to deny Plaintiff's application for employment – to the contrary, the record developed to date indicated the exact opposite since Plaintiff was allegedly being considered for placement in the general pool of candidates for a multitude of open and future positions. *See Doc. No. 63, Kwapick Aff. at ¶¶4-5.* While truthfully, Kwapick's affidavit does essentially describe Defendant's business "in general," it in no way supports any implication that RHI was under any pressure to make a decision as to Plaintiff's employability, and any insinuation that the affidavit supported such a notion was misleading.

Moreover, while Kwapick's affidavit describes how positions are filled based upon the receipt of a request to Robert Half from a client for one or more candidates, no such "request" was attached to his affidavit illustrating an urgent or immediate need for any position, including one with Wells Fargo. This key fact appears to have been

6

overlooked by the Court, who appeared to voice concern for the employer's interests in filling a position within a short time frame which clearly factored into the Court's rationale and decision to rule in favor of Defendant. Here, the record was completely devoid of any evidence of any time constraint or sense urgency, and the assumption that one existed in this case to the detriment of the employer, was clearly erroneous.

### b. *New relevant evidence contradicts any insinuation that Defendant was in an "untenable" position.*

#### i. RHI's Rule 30(b)(6) Depositions.

On January 27, 2011, Plaintiff took the depositions of Defendant's Rule 30(b)(6) Representatives, including James Kwapick who submitted the above-referenced affidavit in support of Defendant's Motion for Summary Judgment, and Stacey Manley. These witnesses both testified in a manner that contradicted any notion or insinuation that Defendant was under a time crunch or in an "untenable" position. Kwapick testified that he did not know why Defendant's first letter to Plaintiff gave him 10 days versus some other number of days. *See Roy Aff. ¶2, Ex. 1, Deposition of James Kwapick ("Kawpick Depo."), at p. 10.* He testified that the form letter sent to prospective employees always gives a period of 10 days – no more, no less, regardless of whether the report contains one or 10 inaccuracies. *Id. at 11, 17-18.* Further, he did not draft or sign either of the letters sent to Plaintiff dated February 11, 2010 and February 25, 2010. *Id. at 9, 11.* Thus, Kwapick's testimony failed to show that the circumstances or particular needs of Defendant necessitated quick decision-making with regard to Plaintiff. The 10 day period was an arbitrary number, applied uniformly by Defendant with regard to all

prospective employees, whether or not they dispute the information and/or regardless of whether they have a legitimate dispute about the accuracy of the information.

Similarly, Ms. Manley's testimony also revealed information contradicting any notion that there was an urgent or immediate need to fill a position or make a final determination with regard to Plaintiff. Manley testified that the "financial services client in the Twin Cities" listed in the posted employment ad to which Plaintiff applied did not necessarily refer to a single client as Defendant has "several" such financial services clients hiring for those positions. *See Roy Aff. ¶3, Ex. 2*, *Deposition of Stacey Manley* ("*Manley Depo."), at p. 8.* Manley also testified that Defendant RHI recruits from a style known as "inventory recruiting" and generally posts positions based on their "experience with what is relevant in the market within a certain period of time," and confirmed that at the time Defendant's client Wells Fargo was seeking loan processors and loan reviewers. *Id. at 9; see also p. 56, 58.* However, at the time Defendant staffed for multiple clients within financial services that were seeking loan reviewers and loan processors as it was the "height of the refi season within home mortgage…" *Id. at 61.* Manley testified the background check, like the one performed in connection with Plaintiff, is done as part of a proactive approach to be able to represent a candidate potentially at Wells Fargo, but does not exclude the person from being considered from placement elsewhere. *Id. at 36.*

  ii. **Written Discovery Responses**

In addition, Defendant produced supplemental responses to Plaintiff's written discovery requests that also contradict any urgent or immediate needs conclusion. Specifically, in response to Interrogatory No. 14, which asked "Who filled the position(s)

8

for which Plaintiff applied and/or was being considered and when were they hired?," Defendant provided the following supplemental answer following Plaintiff's request for supplementation in accordance with Local Rule 37.1:

> Subject to and without waiving said objections, Plaintiff has stated that he believes he applied for the positions listed on documents identified on documents labeled Plaintiff 0021-0022. Without conceding that Plaintiff actually applied for these positions, RHI answers as follows for the positions referenced on Plaintiff 0021-0022: The following individuals were placed by RHI in loan reviewer or loan processor positions at Wells Fargo between February 11, 2010 and February 25, 2010…

*See Roy Aff. ¶4, Ex. 3 at p. 8-9.* Defendant went on to list the names of 14 people hired in that short window of time, without identifying how many more were hired after February 25, 2010 for positions at Wells Fargo or any of the other financial services clients seeking loan reviewers and loan processors. *Id.*

Accordingly, the situation presumed by the Court was non-existent in this case. Plaintiff was apparently being placed into a pool to be considered for a number of opportunities, not just one single position needing to be filled immediately. This was not the situation envisioned by the Court and the basis for the Court's rationale that ultimately led to the Order in favor of Defendant was completely flawed as it was factually incorrect.

### c. *The Court improperly decided a genuine issue of fact in favor of the moving party rather than the non-moving Plaintiff.*

The Court determined that Defendant RHI's adverse action in completely disqualifying Plaintiff from employment within 10 business days of its first letter to Plaintiff did not violate the FCRA as a matter of law. In doing so, the Court's improperly

9

decided a genuine issue of fact in favor of Defendant, the moving party, rather than Plaintiff, the non-moving party.

The Court first found that Congress's use of the word "before" in the text of the statute shows that there <u>must</u> be some amount of time between notice and action, and that Defendant's interpretation rendered the term before "meaningless." *See Doc. No. 96, Order at p. 8.* Thus, the question of the requisite amount of time between notice and action remained as the statute does not define what the waiting time must be. Relying on a general overall presumption about "constraints on employers" that would be imposed if a "reasonable" waiting period applied, without any evidence in support of such a presumption – while the record contained evidence to the contrary that RHI was being unduly inconvenienced while Plaintiff's dispute was being processed – the Court decided a genuine issue of material fact as to the proper waiting period in this case. This was a question that should have been submitted to the jury, as a reasonable jury could have found that waiting only 10 days in this case was not in compliance with the FCRA. *See* <u>Beverly v. Wal-Mart Stores, Inc.</u>, 2008 WL 149032 (E.D.Va.2008) (denying employer's motion to dismiss Section 1681b(b)(3)(A) claim because whether the wait period of five days between the pre-adverse action notice and taking the adverse was reasonable under the circumstances is a question of fact for the jury to determine).[1]

---

[1] This case was cited to in Plaintiff's principal memorandum in opposition to Defendant RHI's Motion for Summary Judgment.

Again, Exhibit C attached to the Affidavit of Daniel J. Ballintine (Doc. No. 62-1 at p. 31) supports Plaintiff's position. Therein, the FTC states that the amount of time that an employer should wait before taking adverse action will vary depending upon the

### d. *The Court's narrow interpretation of the purportedly ambiguous statute was erroneous.*

The Court erroneously narrowed the scope of the statute's intent. More specifically, the constricted determination and application of Defendant RHI's duties under Section 1681b(b)(3)(A) render that entire section obsolete and meaningless and therefore failed "to give effect to the intent of Congress." In interpreting statutes, the Court cannot look beyond the plain meaning of the statute unless the statute is absurd or ambiguous. Without ambiguity, the Court is not permitted to look to the legislative history or agency interpretations. *See* <u>Hightower v. Tex. Hosp. Ass'n</u>, 65 F.3d 443, 448 (5th Cir.1995) ("Only if the language is unclear do we turn to the legislative history."); *see also* <u>Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Housing Fin. Bd.</u>, 201 F.3d 551, 554 (5th Cir.2000) ("When a court reviews an agency's construction of the statute it administers, it is confronted with two questions. First, always, is the question of whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

---

circumstances, such as the nature of the job involved and the way that the employer does business." The FTC further explained that employers should keep "in mind the purpose of the provisions to allow consumers to discuss the report with employers before adverse action is taken."

Similarly, Exhibit D attached to the Affidavit of Daniel J. Ballintine (Doc. No. 62-1) supports Plaintiff's position. Therein, the FTC clearly states that "the facts of any particular employment situation may <u>require</u> a different time," compared to the five days discussed specifically in that situation.

As discussed above, the Court clearly identified that the statute did not articulate the amount of time an employer must wait before taking adverse action, and the statute is undeniably open to more than one reasonable interpretation.  However, the Court then went on to decide that issue in favor of Defendant, without proper analysis and consideration required under the circumstances with the existence of a blatant ambiguity in the statute.  As previously stated, "[t]he statutory purpose of § 1681b(b)(3)(A) is to enable an employee applicant to receive his draft report and <u>correct</u> any of inaccurate information in the report before any decision or action is commenced." <u>Kelchner</u>, 305 F.Supp.2d at 435 (emphasis added).  Thus, the Court appears to have improperly construed and assumed, without explanation or analysis, Congress's intent was to simply give Plaintiff an opportunity to dispute, rather than the opportunity to actually allow his dispute to materialize in any meaningful way. The FTC, the agency empowered to enforce the FCRA, stresses that "dispute rights are among the most important the FCRA gives to consumers." *Letter from Clark W. Brickeroff to Eric J. Wiesberg (June 27, 1997), FTC Informal Staff Letter.*  The Court's decision, if not altered or amended, renders futile the entire section devoted to consumers' rights to dispute erroneous and harmful criminal background information in the employment setting completely without giving effect to Congressional intent.

## CONCLUSION

Plaintiff Eric Johnson, the innocent prospective employee, was the victim of Defendant's unreasonable use and absolute reliance on a blatantly erroneous criminal background report and hurried adverse action taken against him barring him from a vast

pool of employment opportunities through no fault of his own. The statute under which his claims against Defendant RHI were raised was intended to protect his interests. Based on the foregoing, Plaintiff respectfully requests that the Court alter and/or amend the Order granting Defendant's Motion for Summary Judgment and related Judgment on the 15 U.S.C. § 1681b(b)(3)(A) claim concerning RHI's adverse action taken on or about February 25, 2010, and allow that claim to proceed to trial on the merits.

Dated this 30th day of March, 2011.

By: s/Trista M. Roy
**CONSUMER JUSTICE CENTER, P.A.**
Thomas J. Lyons, Esq.
Attorney I.D. #: 65699
Trista M. Roy, Esq.
Attorney I.D. #0387737
367 Commerce Court
Vadnais Heights, Minnesota 55127
Telephone: (651) 770-9707
tristacjc@aol.com
tlyons@lyonslawfirm.com
*Attorneys for Plaintiff*